**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                                        Plaintiff,                    1:25-CV-332 (AMN/PJE)

v.

$3,093.25 in U.S. Currency,

                                        Defendant.

**APPEARANCES:**                        **OF COUNSEL:**

**United States Attorney for the**      **ELIZABETH A. CONGER, ESQ.**
**Northern District of New York**       Assistant United States Attorney
100 South Clinton St.
Syracuse, NY 13261-7198

445 Broadway                            **NICHOLAS C.E. WALTER, ESQ.**
Room 218                                Assistant United States Attorney
Albany, NY 12207
*Attorneys for Plaintiff*

**SHAHID SMITH**
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953
Claimant, *pro se*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On March 13, 2025, the United States of America ("Plaintiff") commenced this action *in rem* seeking civil forfeiture of $3,093.25 in U.S. currency ("Defendant Currency") as property traceable to violations of 21 U.S.C. §§ 841 and 846.  Plaintiff sues pursuant to 21 U.S.C. § 881(a)(6) and Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and

Asset Forfeiture Actions ("Supplemental Rules").  Dkt. No. 1 ("Verified Complaint").  On March 31, 2025, Shahid Smith ("Claimant"), proceeding *pro se*, filed a self-verified claim for the Defendant Currency.  Dkt No. 6 ("Verified Claim").  Claimant also filed a supplemental document ("Supplemental Document") in support of his Verified Claim.

Presently before the Court is the Government's motion to strike the Verified Claim pursuant to Rule G(8)(c) of the Supplemental Rules.  Dkt. No. 11 ("Motion").  For the following reasons, the Motion is denied.

## II.    BACKGROUND

### A.  Plaintiff's Allegations[1]

Plaintiff alleges that this matter arises from a 2022 investigation into narcotic sales conducted by Claimant Smith in and around Saratoga County.  Dkt. No. 1 at ¶ 7.  During this investigation, members of the Saratoga County Sheriff's Office ("SCSO") conducted three controlled purchases of fentanyl and one controlled purchase of crystal methamphetamine from Claimant in December 2022.  *Id.* at ¶¶ 8, 18.

On December 29, 2022, investigators with the SCSO Narcotics Unit and the Saratoga Springs Police Department executed a search warrant at the Gateway Motel, Room #7 where Claimant was reportedly staying.  *Id.* ¶ at 9.  Claimant's girlfriend Dana Goossens ("Goossens") was the sole occupant of the room.  *Id.* at ¶ 10.  Goossens told the investigators that Claimant had been arrested the night before and was being held at the Saratoga County Jail.  *Id.* at ¶ 11.

Plaintiff alleges that law enforcement searched the room and found "a black scale, a pill container holding numerous pills, a black bag containing pills, three cell phones, a green case, a

---

[1] Unless otherwise indicated, relevant information has been drawn from the Verified Complaint, the Verified Claim, and the papers submitted by the parties in connection with the Motion.

black and blue case, a black case, a spoon with residue, a syringe full of a clear unknown substance and $375.00 in U.S. Currency." *Id.* at ¶ 12.  Law enforcement also arrested Goossens after finding crack cocaine and fentanyl on her person.  *Id.* at ¶ 13.

That same day, SCSO members confirmed that Claimant was indeed in custody at the Saratoga County Jail on unrelated charges and obtained an additional warrant to search Claimant's property held at the jail.  *Id.* at ¶ 14-15.  Plaintiff alleges that law enforcement executed the additional warrant on December 30, 2022, and found "a cell phone and $3,133.25 in U.S. Currency." *Id.* at ¶ 15.  In the currency seized at the jail, Plaintiff alleges that law enforcement identified two twenty-dollar bills from the SCSO's controlled purchase operation conducted on December 27, 2022.  *Id.*  Plaintiff thus contends that the Defendant Currency totaling $3093.25 "consists of the currency seized from Smith at the jail on December 30, 2022, less the two twenty-dollar bills identified from the buy on December 27, 2022." *Id.* at 4 n. 1.

Plaintiff also alleges that at the time of his arrest, Claimant had no known legitimate employment. *Id.* at ¶ 17.  Claimant was charged with criminal possession of a controlled substance in the third degree and criminal sale of a controlled substance in the third degree.  *Id.* at ¶ 16.  After a trial, Claimant was convicted of ten counts on February 26, 2024 for selling drugs during the three controlled purchases.  *Id.* at ¶ 18.  Claimant is current incarcerated and serving a thirty-one-and-a-half-year sentence.  *Id.* at ¶ 19.

**B.  Procedural History**

On March 13, 2025, Plaintiff filed a Verified Complaint for forfeiture *in rem* against the Defendant Currency.  *See* Dkt. No. 1.  The following day, the Clerk of Court issued a warrant for the arrest of the Defendant Currency, *see* Dkt. No. 2, which was executed on March 19, 2025, *see* Dkt. No. 4.  Plaintiff served copies of the Verified Complaint, warrant for arrest, and notice to

potential claimants via personal service to Claimant Smith at his place of incarceration on March 21, 2025.  Dkt. No. 3; Dkt. No 11-1 at 6-7.

On March 31, 2025, Claimant timely filed a Verified Claim for the Defendant Currency with this Court and mailed a copy of that claim to the U.S. Attorney's office.  Dkt. Nos. 6-7.  Claimant also filed a letter that the Clerk labeled "Supplemental Document" on April 11, 2025.  Dkt. No. 9.

On May 29, 2025, Plaintiff filed this Motion to strike Claimant's Verified Claim.  Dkt. No. 11.  Plaintiff served copies of the corresponding text notice (setting the motion response deadline), as well as copies of the Motion papers, Dkt. Nos. 11 and 11-1, by certified and regular mail to Claimant at his place of incarceration.  *See* Dkt. No. 12.

Claimant's response to the Motion was due on June 20, 2025.  *See* Dkt. No. 11.  Claimant filed three more letters with the Court asking for updates on his claim, none of which were labeled on the docket as a response.  *See* Dkt. Nos. 13-15.

## III.    DISCUSSION

### A.    *In Rem* Civil Forfeiture Actions

In a civil forfeiture action, the government files suit against property rather than against a person.  *Via Mat International South America, Ltd. v. United States*, 446 F.3d 1258, 1264 (11th Cir. 2006) ("[A] civil forfeiture proceeding is not an action against the claimant but rather is an *in rem* action against the property.") (citation omitted).  Parties who may have an interest in the property may intervene in the action as claimants to protect their interest.  *United States v. All Funds in Account Nos. 747.034/278 (Banco Español de Credito)*, 295 F.3d 23, 25 (D.C. Cir. 2002) ("Civil forfeiture actions are brought against property, not people.  The owner of the property may intervene to protect his interest.").

"*In rem* forfeiture actions are governed by Rule G of the [Supplemental Rules] and the Civil Asset Forfeiture Reform Act of 2000," ("CAFRA") 18 U.S.C. § 981 *et seq.  See United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014).  "The Federal Rules of Civil Procedure also apply to [civil forfeiture] proceedings except to the extent that they are inconsistent with the[] Supplemental Rules."  Supp. R. A(2); *accord United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, No. 13-CV-5567, 2015 WL 5178121, at *4 (E.D.N.Y. Sept. 2, 2015), *aff'd sub nom. United States v. $417,413.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 Fed. App'x 17 (2d Cir. 2017).

### i.  Responsive Pleadings in a Civil Forfeiture Action

Supplemental Rule G(5) (formerly, Rule C(6)) governs responsive pleadings to a civil forfeiture action.  Unlike a typical civil action that generally requires only the filing and service of an answer in response to a civil complaint, Rule G(5) requires that a potential claimant take two steps.  *See United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 161-62 (1st Cir. 2004).

First, once the government has filed a verified complaint to commence a forfeiture action, a claimant who wishes to assert an interest in the property must file "a claim in the court where the action is pending."  Supp. R. G(5)(a)(i)(D).; *accord Vazquez-Alvarez*, 760 F.3d at 197.  The claim must (1) identify the property claimed; (2) identify the claimant and their interest in the property; (3) signed under penalty of perjury—that is, it must be verified; and (4) be served on the government attorney.  *See* Supp. R. G(5)(a)(i).  Where, as here, the Government sends direct notice of the complaint to a potential claimant, the claimant must file a claim "by the time stated in a direct notice sent under Rule G(4)(b)" unless the court "for good cause" sets a different time.  *See*

Supp. R. G(5)(a)(ii)(A).  Second, "[a] claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim."  Supp. R. G(5)(b).

### ii.  Motions to Strike a Claim or Answer

After a claimant has come forward, but at any time before trial, the government "may move to strike a claim or answer: (A) for failing to comply with [Supplemental] Rule G(5) or (6), or (B) because the claimant lacks standing."  Supp. R. G(8)(c)(i)(A) & (B); *see also United States v. $27,601.00 U.S. Currency*, 800 F. Supp. 2d 465, 467 (W.D.N.Y. 2011) ("[U]nder the Supplemental Rules, the government may move to strike a forfeiture claim at any time before trial for failure to comply with Rule G(5) or for lack of standing." (quoting *United States v. $12,126.00 in United States Currency,* 337 Fed. Appx. 818, 820 (11th Cir. 2009) (citing Supp. R. G(8)(c)))).

### iii.  Standing to Contest a Forfeiture Complaint

To contest a civil forfeiture action, a claimant must have standing under the Constitution and standing under the statute governing his claim.  *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999).

Constitutional standing refers to whether the claimant can demonstrate "a sufficient interest in the property to create a 'case or controversy'" pursuant to Article III of the Constitution.  *United States v. $14,000.00 U.S. Currency*, No. 19-CV-153S, 2020WL 1815756, at *2 (W.D.N.Y Apr. 10, 2020) (citing *United States v. 4492 S. Livonia Rd.*, 889 F.2d 1258, 1262 (2d Cir. 1989).  To show that he has constitutional standing, a claimant must allege "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that can likely be redressed by a favorable decision."  *United States v. $10,000 in U.S. Currency*, No. 18-CV-1183 (GTS/CFH), 2020 WL 5757471, at *4 (N.D.N.Y. Sept 28, 2020) (citing *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015).  Thus, to establish constitutional standing in a civil forfeiture action, "a claimant

must demonstrate an ownership or possessory interest in the seized property" and accompany their claim of ownership with "some evidence of ownership." *United States v. $92,550 United States Currency*, No. 22-CV-0957V(Sr), 2023 WL 6006378, *2 (W.D.N.Y. July 25, 2023) (citations omitted), *report and recommendation adopted,* No. 22-CV-957-LJV-HKS, 2023 WL 6557701 (W.D.N.Y. Sept. 5, 2023).[2]

Statutory standing refers to "whether [a claimant] has a cause of action under the [relevant] statute." *United States v. Starling*, 76 F.4th 92, 101 n. 4 (2d Cir. 2023) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). To show that he has statutory standing in a civil forfeiture action, a claimant must comply with the procedural requirements of Supplemental Rule G(5) and CAFRA. *Vazquez-Alvarez*, 760 F.3d at 197; *see also $92,550 United States Currency*, 2023 WL 6006378, at *2 (stating that "statutory standing requires the claimant to comply with the jurisdictional procedural requirements set forth in [CAFRA] and the Supplemental Rules" (citing *4492 S. Livonia Rd*, 889 F.2d at 1262; *United States v. 509 Raspberry Patch Dr.*, 116 F. Supp. 3d 190, 192-93 (W.D.N.Y. 2015))).

Therefore, as applicable here, a forfeiture claimant who has not filed an answer as required by Supplemental Rule G(5)(b) fails to establish statutory standing to contest the forfeiture. *See United States v. $102,090 in U.S. Currency*, No. 1:20-CV-1155, 2021 WL 1393064, at *4 (N.D.N.Y Apr. 13, 2021) (holding that a *pro se* claimant did not establish statutory standing after failing to file an answer despite multiple time extensions); *United States v. $541,395.06 U.S. Currency*, No. 10-CV-6555-CJS, 2012 WL 3614294, at *5 (W.D.N.Y. Aug. 21, 2012) (holding that a claimant

---

[2] Plaintiff does not contest Claimant's constitutional standing. The Court notes that in his Verified Claim, Claimant asserts ownership of the Defendant Currency and submits evidence consisting of an employment timesheet in support of his ownership claim. *See* Dkt. No. 6.

lacked statutory standing because he filed his answer one day late and therefore did not comply with Supplemental Rule G).

### iv.   Strict Compliance and Excusable Neglect

Typically, courts considering "'motions to strike claims under Supplemental Rule G favor strict adherence to the rules and generally do not excuse even technical noncompliance with the rules.'"  *Starling*, 76 F.4th at 100 (quoting *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 322 (6th Cir. 2010)); *see also United States v. $20,000.00 in U.S. Currency*, 350 F. Supp. 3d 1148, 1157 (D.N.M. 2018) (collecting cases).  Nevertheless, a court "has the discretion to excuse a missed deadline if the claimant can show 'excusable neglect.'"  *United States v. $ 1,084,170.78 seized from Seacomm Fed. Credit Union*, No. 8:14–cv–1537, 2015 WL 3500201, at *2 (N.D.N.Y. May 5, 2015) (quoting *$541,395.06 U.S. Currency*, 2012 WL 3614294, at *3) (citation and internal quotations omitted); *see also* FED. R. CIV. P. 6(b)(1)(B) (allowing a court to extend a deadline for good cause on a motion "if the party failed to act because of excusable neglect.").  When considering whether a claimant's neglect is excusable, a court considers four factors: "the danger of prejudice to the non-movant, the length of the delay and its impact on proceedings, the reason for the delay including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  *$541,395.06 U.S. Currency*, 2012 WL 3614294, at *3 (citing *Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395 (1993)).

### B.   Pro Se Claimants

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted).  The Second Circuit has held that courts are obligated to "make reasonable allowances

to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id*. (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). While such allowances "do[] not exempt a party from compliance with relevant rules of procedural and substantive law," courts should not impair a *pro se* party's right to self-representation "by harsh application of technical rules." *Starling*, 76 F.4th at 99 (quoting *Traguth*, 710 F.2d at 95) (citation and internal quotations omitted). Moreover, in the context of forfeiture claims, "the oft-cited statement that courts may require strict compliance with Rule [G(5)] does not negate the liberal construction due pro se pleadings." *United States v. $9,020.00 in U.S. Currency*, 30 F. App'x 855, 857 (10th Cir. 2002) (unpublished). Courts therefore "read *pro se* papers liberally." *Starling*, 76 F.4th at 99 (quoting *Traguth*, 710 F.2d at 95).

### C. Claimant's Submissions

Plaintiff argues that this Court should strike Claimant's Verified Claim because Claimant did not file an answer in satisfaction of Supplemental Rule G(5)(b) and therefore does not have statutory standing. Dkt. No. 11 at 16. Plaintiff also argues that the Court should not make an allowance for Claimant's noncompliance because Claimant cannot demonstrate mitigating factors amounting to excusable neglect. *Id.*

The Court reads Claimant's submissions liberally and construes the Supplemental Document, Dkt. No. 9, as an answer in satisfaction of Supplementary Rule G(5)(b). While it does not take the usual form of an answer, Claimant's Supplemental Document alleges substantive facts that clearly demonstrate "a challenge to the allegations in the government's complaint and an intent to refute the government's case," and therefore "satisfies the fundamental requirements of an answer to the government's complaint." *$9,020.00 in U.S. Currency*, 30 F. App'x at 858 (holding that a district court abused its discretion by not construing *pro se* claimant's verified claim as both

a claim and an answer under the Supplemental Rules because the claim also accomplished the substantive purpose of an answer). Specifically, the Supplemental Document states: "Facts[:] I had employment[.] I was working at Kentucky Fried Chicken . . . . Also there was no controlled buy money found at all. At [the criminal trial] my Attorney file[d] a motion for them to show proof of evidence and there was no money recovered." Dkt. No. 9.

Furthermore, when reading *pro se* submissions liberally, courts interpret them "to raise the strongest arguments that they suggest." *United States v. Pilcher*, 950 F.3d 39, 44 (2d Cir. 2020) (quoting *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 145 (2d Cir. 2017) (per curiam) (internal quotation marks omitted)). Here, the Court reads Claimant's Supplemental Document to dispute certain allegations in the Verified Complaint and raise the following questions of fact: (1) whether Claimant was legitimately employed at the time of his arrest on December 28, 2022; (2) whether the U.S. currency found in his belongings during the search on December 30, 2022 was traceable to legitimate employment or to the sale of narcotics; and (3) whether the U.S. currency found during the same search included two twenty-dollar bills traceable to the controlled-buy operation conducted by the SCSO on December 27, 2022. *See* Dkt. No. 9; *cf.* Dkt. No. 1 at ¶¶ 17, 15. The Court interprets each of Claimant's points as denials of each of Plaintiff's allegations regarding those disputed questions. Dkt No. 1 at ¶¶ 17, 15. To the extent that Claimant does not address Plaintiff's other allegations, the Court deems those allegations admitted. *See* FED. R. CIV. P. 8(b)(6).

Claimant filed the Supplemental Document on April 11, 2025, which makes it timely within the 21-day window given to file an answer after filing a claim. Supp. R. G(5)(b); *see* Dkt. No. 9; Dkt. No. 6 (Verified Claim filed on March 31, 2025). Because Claimant has filed a timely answer and thereby satisfied Supplemental Rule G(5), the Court does not reach the question of

whether Claimant has a case for excusable neglect. *See U.S. v. $541,395.06 U.S. Currency*, No. 10-CV-6555-CJS, 2012 WL 3614294, at *3 (W.D.N.Y. Aug. 21, 2012) (holding that courts apply the excusable neglect standard when considering whether to accept a late filing).

## IV.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Motion to strike Claimant's Verified Claim, Dkt. No. 11, is **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 19, 2025
      Albany, New York

Anne M. Nardacci
U.S. District Judge